## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORTHWESTERN MEMORIAL HOSPITAL<br>251 East Huron Street<br>Chicago, Il 60611<br><br>and<br><br>MICHIGAN MEDICINE<br>d/b/a University of Michigan Hospitals & Health Centers<br>1500 E. Medical Center Dr.<br>Ann Arbor, MI 48109<br><br>and<br><br>MILTON S. HERSHEY MEDICAL CENTER<br>500 University Dr.<br>Hershey, PA 17033<br><br>and<br><br>UH CLEVELAND MEDICAL CENTER<br>3605 Warrensville Center Rd.<br>Shaker Heights, OH 44122<br><br>and<br><br>UH REGIONAL HOSPITALS<br>d/b/a UH Richmond Heights Hospital<br>27100 Chardon Road<br>Richmond Heights, OH 44143<br><br>     Plaintiffs,<br><br>  vs.<br><br>XAVIER BECERRA<br>Secretary of the United States Department of Health and Human Services<br>200 Independence Ave., S.W.<br>Washington, DC 20201<br><br>     Defendant. | Case No.  1:22-cv-313 |

<u>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND SUMS DUE UNDER THE MEDICARE ACT**</u>

**INTRODUCTION**

1.      This is a civil action brought to obtain judicial review of agency decisions regarding Medicare reimbursements rendered by Xavier Becerra (the "Secretary" or "Defendant") in his official capacity as the Secretary of the United States Department of Health and Human Services.  Plaintiffs are hospitals that participate in the Medicare program and qualify for direct graduate medical education ("DGME") payments for training medical residents.  Plaintiffs seek an order setting aside the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii), which unlawfully reduces Plaintiffs' DGME payments by decreasing the number of residents that Plaintiffs may claim during a fiscal year.

2.      Plaintiffs operate approved medical training programs for physician interns, residents, and fellows (collectively, "residents").  Plaintiffs receive Medicare DGME payments, which are calculated, in part, based on the number of full-time equivalent ("FTE") residents that train at each hospital.  If a resident's training time exceeds the number of years designated as the "initial residency period" ("IRP"), the resident's time is weighted at 0.5, which means that the hospital may only count one-half of the resident's time that exceeds the IRP.  Also, the number of FTEs that a hospital may claim for payment in any given year is generally capped at the number of *unweighted* FTEs that it trained in its 1996 fiscal year.

3.      The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute because it calculates a hospital's DGME payments using a weighted FTE cap rather than an unweighted FTE cap.  42 U.S.C. § 1395ww(h)(4)(F).  The effect of the unlawful regulation is to impose on Plaintiffs a weighting factor on residents that are within their IRP or, viewed

differently, results in a reduction of greater than 0.5 for many residents who are beyond the IRP, which prevents Plaintiffs from claiming DGME reimbursement up to their full FTE caps authorized by statute.  Thus, the calculations of the current-year, prior-year, and penultimate-year weighted DGME FTEs (all three of which are elements of a hospital's DGME calculation in a given year) and the FTE caps are contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

4.      The Secretary's application of this regulation violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (the "APA"), and is contrary to the Medicare statute, 42 U.S.C. § 1395ww(h).  Accordingly, Plaintiffs asks this Court to reverse the Secretary's decisions and to order the Secretary to recalculate Plaintiffs' DGME payments as required by statute.

## JURISDICTION AND VENUE

5.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (the "Medicare statute"), which establishes the Medicare program, and the APA.

6.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers the right to obtain expedited judicial review ("EJR") of any action involving "a question of law or regulations relevant to the matters in controversy" when the Secretary's Provider Reimbursement Review Board (the "Board") "determines . . . that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received."  The Board granted EJR to Plaintiffs in decisions dated December 9, 2021, December 14, 2021, December 30, 2021, January 3, 2022, and January 31, 2022.  Exhibits 1–5.  Accordingly, this action is timely filed within the sixty-day limitations period established at 42 U.S.C. § 1395oo(f)(1).

7.      Venue in this Court is proper under 42 U.S.C. § 1395oo(f)(1).

## PARTIES

8.      Plaintiff Northwestern Memorial Hospital ("NMH") is an academic medical center located in Chicago, Illinois.  NMH participates in the Medicare program and has been assigned Medicare Provider Number 14-0281.  NMH operates graduate medical education programs and receives Medicare DGME payments.  NMH contests the Medicare reimbursement decisions for its fiscal years ending December 31, 2015 and December 31, 2019.

9.      Plaintiff Michigan Medicine is an academic medical center located in Ann Arbor, Michigan.  Michigan Medicine participates in the Medicare program and has been assigned Medicare Provider Number 23-0046.  Michigan Medicine operates graduate medical education programs and receives Medicare DGME payments.  Michigan Medicine contests the Medicare reimbursement decision for its fiscal year ending June 30, 2015.

10.      Plaintiff Milton S. Hershey Medical Center ("MSHMC") is an academic medical center located in Hershey, Pennsylvania.  MSHMC participates in the Medicare program and has been assigned Medicare Provider Number 39-0256.  MSHMC operates graduate medical education programs and receives Medicare DGME payments.  MSHMC contests the Medicare reimbursement decision for its fiscal year ending June 30, 2018.

11.      Plaintiff UH Cleveland Medical Center is an academic medical center located in Shaker Heights, Ohio.  UH Cleveland Medical Center participates in the Medicare program and has been assigned Medicare Provider Number 36-0137.  UH Cleveland Medical Center operates graduate medical education programs and receives Medicare DGME payments.  UH Cleveland Medical Center contests the Medicare reimbursement decisions for its fiscal years ending December 31, 2018 and December 31, 2019.

12.     Plaintiff UH Regional Hospitals, d/b/a UH Richmond Heights Hospital, is an academic medical center located in Richmond Heights, Ohio.  UH Richmond Medical Center participates in the Medicare program and has been assigned Medicare Provider Number 36-0075.  UH Richmond Medical Center operates graduate medical education programs and receives Medicare DGME payments.  UH Richmond Medical Center contests the Medicare reimbursement decisions for its fiscal years ending December 31, 2018 and December 31, 2019.

13.     Defendant Xavier Becerra is the Secretary of the United States Department of Health and Human Services and is the federal officer responsible for administering the Medicare program pursuant to the Social Security Act.  Defendant is sued in his official capacity.

## BACKGROUND

### I.      The Medicare Program and Payment for Hospital Services

14.     Medicare is a public health insurance program that generally furnishes health benefits to participating individuals once they reach the age of 65.  42 U.S.C. § 1395c.  The Secretary has delegated much of the responsibility for administering the Medicare program to the Centers for Medicare and Medicaid Services ("CMS"), which is a component of the United States Department of Health and Human Services.

15.     Under the Medicare statute, an eligible Medicare beneficiary is entitled to have payment made by Medicare on his or her behalf for, *inter alia*, inpatient and outpatient hospital services provided by a hospital participating in the Medicare program as a provider of health care services.  *Id.*  The Medicare program consists of four Parts:  A, B, C, and D.  Inpatient hospital services are paid under Part A of the Medicare statute.  *Id.* § 1395d.  Physician, hospital outpatient, and certain other services are paid under Medicare Part B.  *Id.* § 1395k.  Medicare Part C is an optional managed care program that pays for services that would otherwise be

covered under Medicare Parts A and B.  *Id.* §§ 1395w-21–1395w-29.  Medicare Part D is an

optional insurance program for prescription drugs.  *Id.* §§ 1395w-101–1395w-154.  This action

concerns Medicare Part A.

## II.   Direct Graduate Medical Education

16.     The Medicare statute reimburses hospitals for the direct costs of graduate medical

education.  *Id.* § 1395ww(h).  The DGME payment is calculated by multiplying a hospital's

"patient load" times its "approved amount."  *Id.* § 1395ww(h)(3)(A).  The "patient load" is "the

fraction of the total number of inpatient-bed-days . . . during the period which are attributable to

patients with respect to whom payment may be made under [Medicare] part A."  *Id.* §

1395ww(h)(3)(C).  The "approved amount" is the product of a hospital's base-period per-

resident amount ("PRA") and its weighted average number of FTE residents.  *Id.* §

1395ww(h)(3)(B); 42 C.F.R. § 413.76(a).  The weighted average number of FTEs is calculated

using the average of "the actual full-time equivalent resident counts for the cost reporting period

and the preceding two cost reporting periods."  42 U.S.C. § 1395ww(h)(4)(G).  The following is

the basic formula for calculating a hospital's DGME payment:

**PRA x (3-Year FTE Average) x (Medicare Patient Load) = DGME Payment**

17.     The Medicare statute requires that residents who are training beyond their IRP are

weighted at 0.5, so that only half their time is counted*.  Id.* § 1395ww(h)(4)(C)(iv).  The IRP is

defined as the period necessary for board eligibility in the resident's training program, not to

exceed five years.  *Id.* § 1395ww(h)(5)(F).  Most, though not all, residents who are training

beyond the IRP are participating in post-residency fellowship programs.

18.     For cost reporting periods beginning on or after October 1, 1997, Congress

established a cap on the number of *unweighted* DGME FTEs that a hospital may count, which is

set at each hospital's number of unweighted FTEs during its most recent fiscal year that ended on or before December 31, 1996. *Id.* § 1395ww(h)(4)(F). Thus, a hospital's three-year FTE average in the DGME formula is limited by the number of unweighted FTEs that the hospital trained in its 1996 cost reporting period. The FTE cap is determined "before application of weighting factors" based on the IRP. *Id.* § 1395ww(h)(4)(F)(i).

19.     In 1997, the Secretary promulgated an unlawful regulation to implement the 1996 cap that calculates a *weighted* 1996 FTE cap to be used in the payment calculation:

> For purposes of determining direct graduate medical education payment, for cost reporting periods beginning on or after October 1, 1997, a hospital's unweighted FTE count for residents in allopathic and osteopathic medicine may not exceed the hospital's unweighted FTE count for these residents for the most recent cost reporting period ending on or before December 31, 1996. If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 1997, exceeds the limit described in this paragraph (g), the hospital's weighted FTE count (before application of the limit) will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.86(g)(4) (1997).

20.     When issuing this regulation, the Secretary stated, "We believe this proportional reduction in the hospital's unweighted FTE count is an equitable mechanism for implementing the statutory provision." Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1998 Rates, 62 Fed. Reg. 45,966, 46,005 (Aug. 29, 1997); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1998 Rates, 63 Fed. Reg. 26,318, 26,330 (May 12, 1998) [hereinafter the "FY 1998 IPPS Rule"].

21.     On August 1, 2001, the Secretary amended the regulation to determine separate weighted 1996 FTE caps for primary care residents and non-primary care residents, effective for

cost reporting periods beginning on or after October 1, 2001.  42 C.F.R. § 413.86(g)(4)(iii) (2001); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Rates and Costs of Graduate Medical Education: Fiscal Year 2002 Rates, 66 Fed. Reg. 39,828, 39,893-96 (Aug. 1, 2001) [hereinafter the "FY 2002 IPPS Rule"].  The Secretary did not change the formula for determining the weighted 1996 FTE cap.  Rather, the Secretary used the same methodology as in the 1997 rule to calculate a primary care weighted 1996 FTE cap and a non-primary care weighted 1996 FTE cap, which are then added together to determine an overall cap. 42 C.F.R. § 413.86(g)(4)(iii) (2001); FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

22.     In 2004, CMS redesignated the regulation from 42 C.F.R. § 413.86(g)(4)(iii) to 42 C.F.R. § 413.79(c)(2)(iii).  Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 48,916, 49,112, 49,258-64 (Aug. 11, 2004).

23.     The regulation in effect during all fiscal years at issue in this action states as follows:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 2001 exceeds the limit described in this section [i.e., the 1996 unweighted cap], the hospital's weighted FTE count (before application of the limit) for primary care and obstetrics and gynecology residents and nonprimary care residents, respectively, will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.79(c)(2)(iii) (2015-2019).  This regulation is still in effect today.

24.     If a hospital's unweighted FTE count exceeds its unweighted FTE cap, the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) calculates the ratio of a hospital's unweighted FTE cap to the hospital's current-year unweighted FTE count.  *Id*. § 413.79(c)(2)(ii)-(iii) (the "proportion that the number of FTE residents for that cost reporting period exceeds the

number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996"). This ratio represents the percentage by which the hospital's unweighted FTE cap is below the current-year unweighted FTE count. The ratio is then multiplied by the current-year weighted FTE count (both residents within and beyond their IRP) and, thereby, reduces that already weighted FTE count. *Id.* The resulting number is the weighted 1996 FTE cap. The Secretary's methodology is expressed in the following equation:

**(Unweighted FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap**

The Secretary describes the result of this formula as "the hospital's reduced cap." FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

25. The regulation calculates a hospital's DGME payment based on its weighted FTEs, which may not exceed its weighted 1996 FTE cap. 42 C.F.R. §§ 413.76(a), 413.79(c)(2)(iii).

26. In *Milton S. Hershey Medical Center. v. Becerra*, No. 19-CV-3411, 2021 WL 1966572 (D.D.C. May 17, 2021), the plaintiff teaching hospitals sought an order setting aside the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii), asserting that the regulation is contrary to the Medicare statute and is an arbitrary and capricious exercise of agency discretion under the APA. The United States District Court for the District of Columbia held that the application of 42 C.F.R. § 413.79(c)(2)(iii) to compute the teaching hospitals' FTE residents "was contrary to law because the regulation effectively changed the weighting factors statutorily assigned to residents and fellows." *Milton S. Hershey Med. Ctr.*, 2021 WL 1966572, at *1, 4-7. The court stated that "the statue is clear:  the Secretary's rules 'shall provide, in calculating the number of full-time-equivalent residents in an approved residency program,' that residents be weighted at 1.0 and fellows at 0.5." *Id.* at *5 (quoting 42 U.S.C. § 1395ww(h)(4)(C). On July 16, 2021, the

Secretary filed a notice of appeal, which he subsequently withdrew.  The United States Court of Appeals for the District of Columbia Circuit dismissed the appeal on August 23, 2021.  *Milton S. Hershey Med. Ctr. v. Becerra*, No. 21-5169, 2021 WL 4057675 (D.C. Cir. Aug. 23, 2021).

### III.   Medicare Cost Report Appeals

27.     At the close of a hospital's fiscal year, it is required to submit to its designated Medicare Administrative Contractor ("MAC") a "cost report" showing both the costs incurred by the hospital during the fiscal year and the appropriate share of these costs to be apportioned to Medicare.  42 C.F.R § 413.24(f).  MACs are private companies under contract with the Secretary to pay Medicare claims and audit hospital cost reports, among other duties.  42 U.S.C. § 1395kk-1.

28.     The MAC must analyze and audit the cost report and inform the hospital of a final determination of the amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR").  42 C.F.R. § 405.1803(a).  A hospital's DGME payment is among the components of the final payment determination reported in the NPR.

29.     A hospital may appeal a final determination of its Medicare reimbursement to the Board.  42 U.S.C. § 1395oo(a).  The Board has jurisdiction over appeals from MAC determinations if the following requirements are met:  (1) the hospital is dissatisfied with the final determination, (2) the amount in controversy is at least $10,000, and (3) the hospital requests a hearing within 180 days of receiving the final determination.  *Id.*

30.     A group of hospitals may appeal a common dispute to the Board if the following requirements are met: (1) the hospitals are dissatisfied with the final determination; (2) the amount in controversy is, in the aggregate, at least $50,000; and (3) the hospitals request a hearing within 180 days of the final determination.  *Id.* § 1395oo(a), (b).

31.     In addition, for group appeals, the matter at issue must involve "a single question of fact or interpretation of law, regulations, or CMS Ruling that is common to each provider in the group."  42 C.F.R. § 405.1837(a)(2).

32.     If the MAC fails to issue a timely final determination, the Medicare statute entitles a provider to a Board hearing under the following conditions: (1) the provider has not received a final determination from the MAC after filing an original or amended cost report, (2) the provider's cost report complied with the applicable rules and regulations, (3) the provider filed a request for a hearing within 180 days after notice of the contractor's determination would have been received if the determination had been timely, and (4) the amount in controversy is at least $10,000 (or at least $50,000 for a group appeal).  42 U.S.C. § 1395oo(a)(1)(B)-(C), (2)-(3).  The Secretary's regulation implementing § 1395oo(a)(1)(B)-(C) states that a final determination is deemed untimely if not received, through no fault of the provider, within one year after the date of receipt by the contractor of the provider's last-filed cost report for the period.  42 C.F.R. § 405.1835(c)(1).

33.     The Board lacks the authority to decide the validity of a Medicare regulation.  *Id*. § 405.1867.  If a hospital (or group of hospitals) appeals an issue that involves a question that is beyond the Board's authority, the Board may authorize EJR of the case.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842.

34.     The Board must grant EJR if it determines that (1) the Board does not have the authority to decide the legal question because the question is a challenge either to the constitutionality of a statute or to the substantive or procedural validity of a regulation or CMS Ruling, and (2) the Board has jurisdiction to hold a hearing on the specific matter at issue.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842(f)(1).

35.     If the Board issues an EJR decision, the CMS Administrator has the right to "review the Board's jurisdictional finding, but not the Board's authority determination."  42 C.F.R. § 405.1842(a)(3).  The Board's decision to grant EJR "becomes final and binding on the parties unless the decision is reversed, affirmed, modified, or remanded by the Administrator." *Id*. § 405.1842(g)(1)(iii).

36.     If the Board grants the hospital's request for EJR, the hospital may seek judicial review of the action involving a question of law or regulations by commencing a civil action within sixty days of the date on which notification of the Board's determination is received.   42 U.S.C. § 1395oo(f)(l); 42 C.F.R. § 405.1842(g)(2).

## FACTS SPECIFIC TO THIS CASE

37.     Plaintiffs are teaching hospitals that receive Medicare DGME payments. Plaintiffs all trained residents in their fiscal year 1996 ("FY 1996") cost reporting periods. Accordingly, the Secretary established DGME FTE caps for each Plaintiff based on its FY 1996 resident FTE count.

38.     During the fiscal years at issue in this action, Plaintiffs' unweighted FTE counts exceeded their unweighted FTE caps.  Plaintiffs' FTE counts included residents who were both within and beyond the IRP.  The Secretary employed the methodology of the regulation at 42 C.F.R. § 413.79(c)(2)(iii) when applying the FTE weighting factors for residents beyond their IRP to Plaintiffs' DGME FTE caps.

## I.    Board Case Number 22-0450

39.     Plaintiff NMH contests the application of 42 C.F.R. § 413.79(c)(2)(iii) to its fiscal year ending August 31, 2015.  NMH filed an appeal with the Board pursuant to 42 U.S.C. § 1395oo(a)(1)(C) based on the failure of the MAC to issue a timely final determination

concerning NMH's fiscal year ending August 31, 2015.  NMH, through no fault of its own, did

not receive a final determination within one year after the date of receipt by the contractor of the

provider's last-filed cost report for its fiscal year ending August 31, 2015.  NMH filed an appeal

with the Board within the 180-day window following the one-year anniversary of the date of

receipt by the MAC of NMH's cost report, and the amount in controversy was over $10,000.

The Board assigned case number 22-0450 to NMH's appeal.

 40. On January 18, 2022, NMH requested that the Board grant EJR on the question of

the validity of the Secretary's methodology for applying the FTE caps and weighting factors as

specified in 42 C.F.R. § 413.79(c)(2)(iii).

 41. By letter dated January 31, 2022, the Board granted EJR.  The Board held as

follows:

> 1) It has jurisdiction over the matter for the subject year and that the Provider in
> this appeal is entitled to a hearing before the Board;
>
> 2) Based upon the Provider's assertions regarding 42 C.F.R. § 413.79(c)(2)(iii),
> there are no findings of fact for resolution by the Board;
>
> 3) It is bound by the applicable existing Medicare law and regulation (42 C.F.R. §
> 405.1867); and
>
> 4) It is without the authority to decide the legal question of whether 42 C.F.R.§
> 413.79(c)(2)(iii) is valid.

 42. The Board's January 31, 2022, EJR decision constitutes the Secretary's final

agency action in Board case number 22-0450.

 43. By filing this Complaint, NMH has timely sought EJR under 42 U.S.C. §

1395oo(f)(1).

## II. Board Case Number 21-1525

 44. Plaintiff NMH contests the application of 42 C.F.R. § 413.79(c)(2)(iii) to its fiscal

year ending August 31, 2019.  NMH filed an appeal with the Board pursuant to 42 U.S.C. §

1395oo(a)(1)(C) based on the failure of the MAC to issue a timely final determination concerning NMH's fiscal year ending August 31, 2019.  NMH, through no fault of its own, did not receive a final determination within one year after the date of receipt by the contractor of the provider's last-filed cost report for its fiscal year ending August 31, 2019.  NMH filed an appeal with the Board within the 180-day window following the one-year anniversary of the date of receipt by the MAC of NMH's cost report, and the amount in controversy was over $10,000. The Board assigned case number 21-1525 to NMH's appeal.

45.     On November 23, 2021, NMH requested that the Board grant EJR on the question of the validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).

46.     By letter dated December 14, 2021, the Board granted EJR.  The Board held as follows:

1) It has jurisdiction over the matter for the subject year and that the Provider in this appeal is entitled to a hearing before the Board;

2) Based upon the Provider's assertions regarding 42 C.F.R. § 413.79(c)(2)(iii), there are no findings of fact for resolution by the Board;

3) It is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and

4) It is without the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid.

47.     The Board's December 14, 2021, EJR decision constitutes the Secretary's final agency action in Board case number 21-1525.

48.     By filing this Complaint, NMH has timely sought EJR under 42 U.S.C. § 1395oo(f)(1).

**III.    Board Case Number 20-1772**

49.    Plaintiff Michigan Medicine contests the application of 42 C.F.R. §

413.79(c)(2)(iii) to its fiscal year ending June 30, 2015.  Michigan Medicine filed an appeal with

the Board pursuant to 42 U.S.C. § 1395oo(a)(1)(A) based on the MAC's final determination

concerning Michigan Medicine's fiscal year ending June 30, 2015.  Michigan Medicine filed an

appeal with the Board within the 180-day window following receipt of the MAC's final

determination, and the amount in controversy was over $10,000.  The Board assigned case

number 20-1772 to Michigan Medicine's appeal.

50.    On December 6, 2021, Michigan Medicine requested that the Board grant EJR on

the question of the validity of the Secretary's methodology for applying the FTE caps and

weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).

51.    By letter dated January 3, 2022, the Board granted EJR.  The Board held as

follows:

> 1) It has jurisdiction over the matter for the subject year and that the Provider in
> this appeal is entitled to a hearing before the Board;
>
> 2) Based upon the Provider's assertions regarding 42 C.F.R. § 413.79(c)(2)(iii),
> there are no findings of fact for resolution by the Board;
>
> 3) It is bound by the applicable existing Medicare law and regulation (42 C.F.R. §
> 405.1867); and
>
> 4) It is without the authority to decide the legal question of whether 42 C.F.R. §
> 413.79(c)(2)(iii) is valid.

52.    The Board's January 3, 2022, EJR decision constitutes the Secretary's final

agency action as to 42 C.F.R. § 413.79(c)(2)(iii) in Board case number 20-1772.

53.    By filing this Complaint, Michigan Medicine has timely sought EJR under 42

U.S.C. § 1395oo(f)(1).

IV.     **Board Case Number 22-0090**

54.     Plaintiff MSHMC contests the application of 42 C.F.R. § 413.79(c)(2)(iii) to its fiscal year ending June 30, 2018.  MSHMC filed an appeal with the Board pursuant to 42 U.S.C. § 1395oo(a)(1)(A) based on the MAC's final determination concerning MSHMC's fiscal year ending June 30, 2018.  MSHMC filed an appeal with the Board within the 180-day window following receipt of the MAC's final determination, and the amount in controversy was over $10,000.  The Board assigned case number 22-0090 to MSHMC's appeal.

55.     On November 23, 2021, MSHMC requested that the Board grant EJR on the question of the validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii).

56.     By letter dated December 9, 2021, the Board granted EJR.  The Board held as follows:

> 1) It has jurisdiction over the matter for the subject year and that the Provider in this appeal is entitled to a hearing before the Board;
>
> 2) Based upon the Provider's assertions regarding 42 C.F.R. § 413.79(c)(2)(iii), there are no findings of fact for resolution by the Board;
>
> 3) It is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and
>
> 4) It is without the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid.

57.     The Board's December 9, 2021, EJR decision constitutes the Secretary's final agency action in Board case number 22-0090.

58.     By filing this Complaint, MSHMC has timely sought EJR under 42 U.S.C. § 1395oo(f)(1).

**V.     Board Case Numbers 20-1839GC and 22-0126GC**

59.     Plaintiffs UH Cleveland Medical Center and UH Richmond Heights Hospital
contest the application of 42 C.F.R. § 413.79(c)(2)(iii) to their fiscal years ending on December
31, 2018.  UH Richmond Heights Hospital timely filed an appeal with the Board following the
receipt of its final determination from its MAC, pursuant to 42 U.S.C. § 1395oo.  UH Cleveland
Medical Center filed an appeal with the Board pursuant to 42 U.S.C. § 1395oo(a)(1)(C) based on
the failure of the MAC to issue a timely final determination.  Plaintiff UH Cleveland Medical
Center, through no fault of its own, did not receive a final determination within one year after the
date of receipt by the MAC of its last-filed cost report for its fiscal year ending December 31,
2018.  UH Cleveland Medical Center filed its appeal with the Board within the 180-day window
following the expiration of the 12-month period for issuance of the final contractor
determination.

60.     UH Cleveland Medical Center and UH Richmond Heights Hospital established a
group appeal, with an aggregate amount in controversy of over $50,000, contesting the
application of 42 C.F.R. § 413.79(c)(2)(iii) to their cost reports ending in 2018.  The Board
assigned case number 20-1839GC to these Plaintiffs' group appeal.

61.     Plaintiffs UH Cleveland Medical Center and UH Richmond Heights Hospital also
contest the application of 42 C.F.R. § 413.79(c)(2)(iii) to their fiscal years ending on December
31, 2019.  UH Cleveland Medical Center and UH Richmond Heights Hospital filed a group
appeal with the Board pursuant to 42 U.S.C. § 1395oo(a)(1)(C) based on the failure of the MAC
to issue timely final determinations.  UH Cleveland Medical Center and UH Richmond Heights
Hospital, through no fault of their own, did not receive final determinations within one year after
the date of receipt by the MAC of these Plaintiffs' last-filed cost reports for their fiscal year

ending December 31, 2019.  UH Cleveland Medical Center and UH Richmond Heights Hospital filed their appeal with the Board within the 180-day window following the expiration of the 12-month period for issuance of the final contractor determinations.

62.     UH Cleveland Medical Center and UH Richmond Heights Hospital established a group appeal, with an aggregate amount in controversy of over $50,000, contesting the application of 42 C.F.R. § 413.79(c)(2)(iii) to their cost reports ending in 2019.  The Board assigned case number 22-0126GC to these Plaintiffs' group appeal.

63.     On December 10, 2021, the Plaintiffs in Board case numbers 20-1839GC and 22-0126GC—UH Cleveland Medical Center and UH Richmond Heights Hospital—jointly requested that the Board grant EJR on the question of the validity of the Secretary's methodology for applying the FTE caps and weighting factors as specified in 42 C.F.R. § 413.79(c)(2)(iii) to their applicable cost reporting years.

64.     By letter dated December 30, 2021, the Board granted EJR.  The Board held as follows:

> 1) It has jurisdiction over the matter for the subject years and that the remaining participants in these appeals are entitled to a hearing before the Board;
>
> 2) Based upon the participants' assertions regarding 42 C.F.R. § 413.79(c)(2)(iii), there are no findings of fact for resolution by the Board;
>
> 3) It is bound by the applicable existing Medicare law and regulation (42 C.F.R. § 405.1867); and
>
> 4) It is without the authority to decide the legal question of whether 42 C.F.R. § 413.79(c)(2)(iii) is valid.

65.     The Board's December 30, 2021, EJR decision constitutes the Secretary's final agency action in Board case numbers 20-1839GC and 22-0126GC.

66.     By filing this Complaint, UH Cleveland Medical Center and UH Richmond Heights Hospital have timely sought EJR under 42 U.S.C. § 1395oo(f)(1).

## COUNT I
## Violations of the Medicare Statute

67.     Plaintiffs reallege and incorporate by reference paragraphs 1–66 as if fully set forth below.

68.     The Secretary's regulation implementing the weighting factors for residents beyond their IRP to the 1996 FTE cap is contrary to the Medicare statute because it determines the 1996 FTE cap after application of the weighting factors.  42 U.S.C. § 1395ww(h)(4)(F)(i).  The effect of the Secretary's unlawful regulation is to impose on Plaintiffs weighting factors that result in reductions greater than 0.5 for many residents who are beyond the IRP, and the regulation prevents Plaintiffs from claiming and receiving DGME reimbursement using their full unweighted FTE caps.  42 C.F.R. § 413.79(c)(2)(iii); *Milton S. Hershey Med. Ctr.*, 2021 WL 1966572, at *4-7.  Thus, the Secretary's calculations of Plaintiffs' current-year, prior-year, and penultimate-year weighted DGME FTEs and the FTE caps are contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and, as a result, Plaintiffs' DGME payments are unlawfully understated.

69.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute.  *Milton S. Hershey Med. Ctr.*, 2021 WL 1966572, at *4-7.  First, the regulation creates a weighted 1996 FTE cap.  The statute plainly requires the Secretary to determine the FTE cap "before application of weighting factors," which is an unweighted cap.  42 U.S.C. § 1395ww(h)(4)(F)(i).  The Secretary instead applies a weighted 1996 FTE cap for the current year that is based on the ratio of the unweighted FTE cap to the current-year unweighted FTE count.  The Secretary concedes that the regulation results in "the hospital's reduced cap," which is less than the unweighted FTE cap.  FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.  The Secretary applies this weighted 1996 FTE cap as an absolute limit on the number of FTEs that can be used

to calculate a hospital's DGME payment.  This weighted FTE cap is applied *after* application of the weighting factors for residents who are beyond the IRP in the current year, which violates Congress's directive to determine the cap *before* application of those weighting factors.  42 U.S.C. § 1395ww(h)(4)(F)(i).

70.     Second, the Secretary's weighted FTE cap prevented Plaintiffs from ever reaching an FTE count up to their unweighted FTE caps simply because they train fellows beyond their IRPs.  In fact, the Secretary's regulation prevents any hospital that trains fellows beyond their IRPs from reaching its 1996 FTE cap. The downward impact on the FTE count increases as a hospital trains more residents who are beyond the IRP.

71.     The following example illustrates the impact of the Secretary's unlawful regulation.  The example compares the application of 42 C.F.R. § 413.79(c)(2)(iii) to FTE data for Plaintiff NMH during its fiscal year ending in 2015 and a hypothetical Hospital A that has the same FTE cap as NMH and the same count of residents within their IRPs as NMH.  The only difference between the two hospitals is that NMH trained fellows beyond their IRPs:

|  | NMH FY 2015 | Hospital A |
|---|---|---|
| Unweighted FTE Cap (UCap) | 356.14 | 356.14 |
| Current Year Unweighted Resident FTEs Within IRP | 435.64 | 435.64 |
| Current Year Unweighted Fellow FTEs Outside IRP | 90.64 | 0.00 |
| Current Year Total Unweighted FTEs (UFTE) | 526.28 | 435.64 |
| Current Year Total Weighted FTEs Before Application of Cap (WFTE) | 480.96 | 435.64 |
| Current Year Total Weighted FTEs After Application of Cap (WCap) | 325.48 | 356.14 |

The Secretary's formula at 42 C.F.R § 413.79(c)(2)(iii) results in weighted FTE caps of 325.48 for NMH and 356.14 for Hospital A:

- 42 C.F.R. § 413.79(c)(2)(iii) formula:

**(1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap**

- 42 C.F.R. § 413.79(c)(2)(iii) applied to NMH:        356.14/526.28 x 480.96 = **325.48**

- 42 C.F.R. § 413.79(c)(2)(iii) applied to Hospital A:  356.14/435.64 x 435.64 = **356.14**

72.     The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) results in very different DGME payments for NMH and Hospital A.  Because Hospital A does not train fellows beyond their IRPs, it receives a DGME payment based on its full FTE cap of 356.14 FTEs, even though its weighted FTEs are *lower* than NMH weighted FTEs.  Hospital A would be paid for 30.66 FTEs *more* than NMH, even though the hospitals' unweighted FTE caps are identical, they each trained 435.64 residents within their IRP, and Hospital A trained 45.32 *fewer* weighted FTEs (before application of weighted cap) than NMH.

73.     The Secretary's regulation results in NMH receiving far less DGME reimbursement than hypothetical Hospital A simply because NMH trained 90.64 residents beyond their IRP in fiscal year 2015.  NMH would receive far less reimbursement than Hospital A, even though it trained more individuals than Hospital A trained.  The Medicare statute requires that these fellows be weighted at 0.5, and requires that NMH's FTE count be limited to its unweighted FTE cap of 356.14, but the Secretary has violated the statute by not calculating NMH's FTE count up to the full FTE cap solely as a result of the Secretary's improper imposition of a weighted FTE cap.

74.     All Plaintiffs are similarly situated to NMH.  Each Plaintiff trained residents who were beyond their IRPs.  Each Plaintiff, except UH Richmond Heights Hospital in fiscal year ending December 31, 2018, trained a total number of residents that was higher than its unweighted FTE cap.  In fiscal year ending December 31, 2018, UH Richmond Heights Hospital trained fewer unweighted FTE residents than its cap, but the Secretary's regulation unlawfully reduced its FTE count during the prior two fiscal years, which thus reduced UH Richmond

Heights Hospital's three-year FTE average in fiscal year ending December 31, 2018.  Therefore, each Plaintiff is prevented from receiving its full DGME payments due to the Secretary's regulation.

75.     All Plaintiffs suffered a downward payment adjustment that is greater than may be imposed by the statutory 0.5 weighting factor for training residents beyond the IRP.

76.     By establishing the 1996 FTE cap based on the hospital's unweighted FTE count for 1996, Congress entitled Plaintiffs to claim FTEs up to that cap.  The Secretary's regulation renders this impossible because Plaintiffs trained residents who are beyond the IRP.  The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute at 42 U.S.C. § 1395ww(h) and is, therefore, invalid.

## COUNT II
## Arbitrary and Capricious Agency Action

77.     Plaintiffs reallege and incorporate by reference paragraphs 1–76 as if fully set forth below.

78.     The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary and capricious and an abuse of discretion and is, therefore, invalid.  5 U.S.C. § 706(2).  By establishing a cap on FTEs, Congress intended that hospitals be paid based on that cap.  The Secretary's regulation prevents Plaintiffs from reaching their FTE caps and improperly treats similarly situated hospitals differently because hospitals with identical FTE caps and that have unweighted FTE counts greater than their caps, will receive very different payments.  When promulgating the regulation at 42 C.F.R. § 413.79(c)(2)(ii)-(iii), the Secretary wholly failed to justify this differing treatment. *See Burlington N. and Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005).  The Secretary did not even acknowledge that the regulation would have such an inequitable effect.  FY 1998 IPPS Rule, 63 Fed. Reg. at 26,330.  Because the Secretary "entirely

failed to consider an important aspect of the problem," the regulation is "arbitrary and capricious" and cannot stand.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request relief as follows:

1.      A declaration by the Court that the Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary, capricious, an abuse of discretion, and contrary to statutory law, and is, therefore, invalid.

2.      A declaration by the Court that 42 U.S.C. § 1395ww(h) forbids the Secretary from imposing a weighted FTE cap.

3.      A declaration by the Court that the Secretary must apply FTE weighting factors after applying the unweighted FTE cap as required by 42 U.S.C. § 1395ww(h).

4.      An order from this Court requiring the Secretary to recalculate Plaintiffs' DGME payments consistent with the Medicare statute so that the Plaintiffs' FTE counts are weighted for residents beyond the IRP at 0.5 and are capped based on the number of residents trained in the most recent cost reporting periods ending on or before December 31, 1996 as subsequently adjusted by Congress.

5.      An order from this Court requiring the Secretary to pay Plaintiffs interest on the payments resulting from the Court's orders, pursuant to 42 U.S.C. § 1395oo(f)(2).

6.      An order from this Court awarding Plaintiffs the costs and fees incurred in this litigation and granting such other relief in law and/or equity as this Court may deem just and proper.

Respectfully submitted,

/s/ Ronald S. Connelly
Ronald S. Connelly
D.C. Bar No. 488298
POWERS PYLES SUTTER & VERVILLE, PC
1501 M Street, N.W., 7th Floor
Washington, DC 20005
Tel. (202) 872-6762
Fax (202) 785-1756
Ron.Connelly@PowersLaw.com
Attorney for Plaintiffs

Dated:  February 6, 2022